May it please the Court, I am Alexandra Manbeck, attorney for the plaintiff in this case. This case also deal similar, a little bit similar to the prior case that Your Honor just listened to, deal with the mental, there's many issues, but the main issue, one of the two main issues is mental impairment. And we deal with the period of 1996 to 1998. In fact, it's March 14, 1996 to March 7, 1998, and whether the appellant is entitled to disability benefits. And the ALJ in this case found that the appellant does not have a severe impairment. And we submit that he had a severe impairment. And whether or not he had a severe impairment hinged on the issue of regidicata and the substantial evidence standard. Your Honor, at the appellant level, you review the district court decision de novo, and I submit that the district court decision was erroneous. And this case is totally procedurally a mess, and it would be helpful to me to have you tell me what you think are the open issues. All right, Your Honor, this case has gone through two district court or three district court decisions, five hearings. And so we're going to have hearing number one, number two, number three, number four, number five, five administrative hearings. I want to concentrate on hearing number one and number two. Hearing number one, in 1998, the administrative lawyers found that the claimant or the appellant had a severe mental impairment. I'm just going to deal with the mental impairment. Had a severe mental impairment, and that he's limited to simple repetitive tasks. I appeal the ‑‑ and that he was not disabled. I appeal that case to the district court, and then it was sent back, and there was another hearing. And the ALJ found that, again, second hearing, the ALJ found that he did have a mental, a severe mental impairment that limited him to simple repetitive tasks, but only before, I mean, only after 1998. Not before then. After March 1998, he had a severe impairment. And in the 2000 hearing before, and I'm talking about the second administrative hearing in the year 2000, there was a medical expert, Dr. Boulter. He discussed the whole record, the record from 1996 to 2000. He explained why he agreed with the examining expert that there was a severe mental impairment limiting the claimant to simple repetitive tasks. So that went on for half an hour, the testimony of Dr. Boulter. And, Your Honor, what happened? The government lost the case. We no longer have that evidence, and that is very prejudicial to the appellant. So, again, I took the case to the district court, and the district court said that, all right, there's no issue about the mental impairment, but the district court wants to remand the case again and wants the ALJ to look at the physical impairment, whether he was limited to light work. That's simply physical, nothing mental. The mental issue has been settled. And that, Your Honor, I submit is rejudicata. That's the decision of the district court in 2001, September 2001, the decision of the district court that say that the only outstanding issue of the physical impairment are whether the claimant can return to his past relevant work. If he had a past relevant work, and that the ALJ should only look at the issue of past relevant work and the issue of residual functional capacity, which deal with the remaining time. But is the short of the procedural problem, to cut to the chase for the moment, that the, in your view, the ALJ was not supposed to reopen the mental health issues after the first two hearings, but he did, and he heard Dr. Haroon and now is relying on Dr. Haroon. Right. I mean, is that the short of it? Right, right. And so at the third hearing, it was unfortunately not the same ALJ who heard the two first hearings. It was a totally different ALJ. And then he brought two new medical experts, so he reopened the issue of mental impairment, which he's not supposed to. And he also reopened the issue of physical impairment, which he was not supposed to, because the district court, the 2001 decision was very clear that he had to consider the examining record, the 1996 examining record of Dr. Rasenjani, and based on that, determine whether there was past relevant work. He's not supposed to bring in new medical expert and has a de novo hearing. And that's, Your Honor, that's what's so wrong with this case. It's only because he was confused, right, about what the point of the remand was. The point of remand, Your Honor, and the district court is very clear, was for him to determine to re-depose or re-interview the claimant to see if he had past relevant work, because it wasn't clear in the record whether he was a chauffeur or a driver in Vietnam. That's the only issue, the past relevant work. Did he work for pay? How long did he work? Was he sick? Was he ill? Did he work full-time? Was he work part-time? It had nothing. He was not supposed to reopen a totally new hearing. So what happened in 2002, he brought two new medical experts who ignored everything in the past and say, and again I go to the mental impairment, the psychiatrist in 2002 say he had no severe mental impairment. And, Your Honor, I say this is wrong because the district court already decide, adopt the finding of the administrative law judge, the first and the second hearing. The issue of mental impairment is no longer on the table. In fact, the issue of physical impairment, it wasn't even no longer on the table because it's in the record. It's the substantial evidence rule. It was developed in 1996. Are you at present contesting the determination with regard to past relevant work? My only comment about past relevant work, Your Honor, is that even if we accept the fact that he, well, that he had past relevant work as a chauffeur, and then the new ALG found that he couldn't do it anymore, so he could be a driver, a simple driver. My comment was that that's unskilled work. That's unskilled work. That's not skilled work. So it's not transferable skill. This is something anybody can do. You don't have to be trained a driver. All you have to have is a driver license. So this is unskilled work. And as unskilled work is fall under the grid, he should be found disabled. If it is unskilled work, it's not skilled work. And then my last comment is that if he is restricted to simple repetitive tasks, if he had a severe impairment, he could not be a driver. Driving is not a simple repetitive task. It demands constant attention on the road. No one in this room could say in their right mind that driving is a simple repetitive task. That's all I have, Your Honor. Thank you, Counselor. You have some rebuttal time remaining when the time comes. Mr. Kresge. Yes, good morning again. I'd like to just address something that came out in the opening argument. Appellant is referring to an ALJ hearing that took place in 2000 at which there was a medical expert testifying named Sidney Bolter. And Appellant is correct that the transcript of that hearing is not part of the record. It was lost. There is an ALJ decision which summarizes Dr. Bolter's testimony. And at page 60 of the I mean, the reason why that was sent back was precisely because it isn't fair for us to be considering testimony that was lost, no? Well, Appellant relies upon this. And I believe that Appellant has misstated what Dr. Bolter said. It doesn't seem anybody should be relying on it, but go ahead. Okay. Well, Dr. Bolter said that the claimant didn't have a severe mental impairment, according to the ALJ summary. And that's at pages 60 and 61 of the supplemental excerpts. The bulk of the medical evidence seems to suggest that he's pretty much of a basket case, though, with severe post-traumatic stress disorder. At least one of the medical reports early on suggests that. And I guess I would like you to address the procedural issue that was discussed in the previous colloquy, that there was earlier a finding that he did have a severe mental impairment and that that issue was not up for relitigation. There was an earlier opinion that the claimant was limited to performing simple repetitive tasks. And that was based on a consultative examiner's report, which found that the claimant had borderline intellectual functioning. I believe that report was in 1996 and it was by Dr. Vallette. Now, the ALJ addresses Dr. Vallette's opinion by reference in the decision that's before the court in this case. He references it, in fact, in his prior decision. He says in the current decision that for the same reasons he rejected Dr. Vallette's opinion then, he's doing so again. And he had the medical advisor's testimony, Dr. Haroun's testimony, to rely upon. And what Dr. Haroun found was that the claimant hadn't been treated for mental impairment prior to May 1998, which was when the subsequent benefits were granted. In fact, there was no evidence that the claimant was a basket case in 1996 when Dr. Vallette saw him. His problem was... But isn't the procedural problem, and I could be wrong about this, but my understanding is that one of the assertions here is that Dr. Haroun should never have been able to testify, because that issue wasn't on the table at the point of that hearing. That hearing was going forward because of a limited remand from the district court for narrow purposes, and reopening the mental health determination wasn't one of them. Is that the suggestion? And if so, why isn't that so? It certainly is a palatine suggestion, but I don't believe that it's so. The remand order was not so narrowly and specifically drawn. There was no objection to Dr. Haroun's testimony at that hearing, and the district court didn't find any problem with the ALJ relying upon Dr. Haroun when it affirmed the decision in this case. Further, Dr. Haroun's testimony is completely consistent with what the medical record shows. The claimant was not receiving treatment for mental impairment. He had a diagnosis... Well, if you have a borderline intellectual functioning, you're not going to get any treatment for it. You just have borderline intellectual functioning. And more to the point... So why does it prove that he didn't have any treatment for it? Well, more to the point, he had that diagnosis because he didn't bring his glasses to the examination. Well, that isn't what Dr. Follett said. As I understood what Dr. Follett said was he didn't bring his glasses, therefore this number is somewhat low, so my estimate is that rather than being deficient, he is, you know, borderline. In other words, she gave him a bump for the fact that he didn't have his glasses, so she made a determination taking into account the fact that he didn't have his glasses. The ALJ correctly noted that no one else diagnosed borderline intellectual functioning. Didn't one of the other doctors say that he couldn't add 5 and 5, basically? He didn't call it borderline intellectual functioning, but he said he couldn't add 5 and 5, or some numbers, or some very small numbers. I don't recall which exam that might have been. But no one else diagnosed borderline intellectual functioning. So this diagnosis stands alone. There's no treatment. There's no suggestion that the claimant was receiving treatment, except for... Excuse me. How would you treat somebody for borderline intellectual functioning? Well, but the claimant's current disability isn't predicated on borderline intellectual functioning. It's predicated on depression or post-traumatic stress disorder. And these are conditions that arose later. Was the claimant incapable of driving a motor vehicle for pay or for hire? And the evidence shows that the claimant had done so for a number of years. And that clearly that work was not unskilled, as the appellant contends. The vocational expert who testified at the last hearing lists a long series of requirements in his testimony. And it also points to an Exhibit 7E. This testimony is based upon the Dictionary of Occupational Titles and clearly indicates that the job was semi-skilled. The vocational expert's testimony further indicates that the claimant had transferable skills from his past work. And that those skills were transferable to jobs that the vocational expert identified in his testimony. I would suggest that if the claimant had been able to perform this job in the past, there's something wrong with a conclusion that he had intellectual functioning that would have prevented him from performing this job. There's no reason to believe that anything had happened in the interval. What about Dr. Hurwitz? Didn't he also say that he had a borderline IQ? Well, Dr. Hurwitz is another non-examining doctor. His opinion is entitled to no more weight than Dr. Haroun's, for example. You've said before there was no other doctor that said this, and I'm saying there was one. Okay. Dr. Haroun's opinion is really based solely on Dr. Vallette's examination. There were no other records to review. I may have misspoken. There are some things addressed by Dr. Haroun in his testimony when he talks about a nurse practitioner's diagnosis of depression. And there are some records the appellant has pointed to that mention that the claimant was receiving some medication. I can't recall which one it was. But the record also shows that the medication was being prescribed for possibly for a sleep disorder and not for depression, or possibly for both. As Dr. Haroun pointed out, there wasn't a psychiatric diagnosis, and there weren't any findings of mental impairment on Axis I. There was just this suggestion, this inconsistent suggestion of borderline intellectual functioning. And I wanted to make one other point with regard to a supplemental citation that was submitted just before the hearing. The appellant has alleged that the ALJ didn't ask the vocational expert whether the testimony was consistent with what he was saying. It's clear from the record that the vocational experts citing the Dictionary of Occupational Titles throughout his testimony, as this Court held in Massachi, which is cited in one of plaintiff's supplemental citations, where there's no inconsistency between the DOT and the vocational expert's testimony, that could be a whole other matter. So we would submit, procedurally, I believe the ALJ ultimately did what the district courts had directed him to do. We would submit that there was no res judicata effect to prior findings in vacated administrative law judge decisions that found mental health limits in the ALJ. And we would submit that the ALJ did not ask the vocational expert for any of the citations prior to May 8, 1998, and that substantial evidence supported the ALJ's finding that the claimant could perform work that existed in significant numbers in the national economy. The Court should, therefore, affirm the Commissioner's final decision. Thank you, counsel. Ms. Manbeck, I think you have a little time remaining. Ms. Manbeck. Your Honor, there was a hearing held on April 3, 2000, and in which the Commissioner, the government, lost the tape. And I submit, Your Honor, that that hearing in which I attended, the social security medical expert, Dr. Bolter, went on and on and on for half an hour or 45 minutes about disability, the mental disability of the claimant. In which he explained why he agreed that he was limited to simple repetitive tasks, that he did have a severe impairment. And I submit, Your Honor, that the fact that it is a Commissioner, it is a government who lost that tape, that critical evidence for the claimant would make what should turn the Court should bear in mind that issue, that we have critical evidence that is favorable to the claimant here that was lost. By the government, in which Dr. Bolter explained, because I was present at the hearing, why he think that the claimant and Dr. Bolter is a government witness. He's not my witness. And he explained why the claimant, the appellant, was limited during that period of time, 1996 to 1998, to simple repetitive tasks. And the fact that the government lost that critical tape is very helpful for the appellant to make his case, should, the Court should take that into account to weigh the evidence as a whole in favor of the appellant. Because we've lost the evidence that should be helpful to our case, that should establish that during that period of time, he did have a severe impairment and he was limited to simple repetitive tasks. And for a new ALJ to bring a medical expert five years later and say, no, he had no severe mental impairment, I think it's very unfair to the appellant, Your Honor. Thank you, counsel. The case just argued is submitted. We appreciate counsel's arguments. And we will take our morning break.
judges: Hall, Graber, Berzon